DECISION AND JUDGMENT ENTRY
The Hursts appeal from the Gallia County Court of Common Pleas judgment that delineates the rights and responsibilities that Delores Baker and Debra and Douglas Elliott (hereinafter "the Bakers") have as easement holders over land owned by appellants. Appellants assign the following errors:
 1. THE FIRST AND MAJOR ASSIGNMENT OF ERROR IS THE FAILURE OF THE COURT TO FOLLOW THE DIRECTIVES OF THE COURT OF APPEALS BY NOT SETTING FORTH IN DETAIL THE RESPECTIVE RIGHTS AND RESPONSIBILITIES OF THE PARTIES.
 2. THE COURT ERRED WHEN IT MADE THE FOLLOWING FINDINGS. "IN ORDER THAT THE OWNER OF THE EASEMENT MAY PERFORM THE DUTY OF KEEPING IT IN REPAIR, THE DEFENDANTS HAVE A RIGHT TO ENTER THE SERVANT [sic] ESTATE AT ALL REASONABLE TIME TO EFFECT THE NECESSARY REPAIRS AND MAINTENANCE. FURTHERMORE, THE EASEMENT OWNER MAY GRADE, GRAVEL, PLOW AND PAVE SUCH WAY."
 3. THE COURT ERRED IN ITS COMMENTS ON FENCING ON PAGE 3 OF THE ENTRY.
 4. WITH REGARD TO THE SUBJECT OF GATES, THE COURT ERRED WHEN IT FOUND THE GATE IN THE PASTURE FENCE ON THE UPPER LEFT HAND SIDE OF THE PROPERTY HAD BEEN THERE FOR WELL OVER SIXTY (60) YEARS AND HE ERRED ALSO WHEN HE SAID MR. BAKER TESTIFIED TO THE GATE HAVING BEEN THERE FOR SIXTY (60) YEARS.
 5. THE COURT ERRED UNDER THE PARAGRAPH ON PARKING WHEN IT FOUND THE BAKERS CAN PARK ON THE DRIVEWAY.
 6. THE JUDGE ERRED BY ALLOWING THE DEFENDANTS TO USE THE CULVERT UNDER THE PLAINTIFFS' DRIVEWAY AS A PASSAGEWAY FOR CATTLE.
 7. THE COURT ERRED IN ITS ORDER ON PAGE 6, ITEM III, WHEN IT FAILED TO MAKE SPECIFIC DESIGNATIONS AS TO THE RIGHTS AND RESPONSIBILITIES OF THE PARTIES WITH REGARD TO THE FENCE, AND IN DELAYING THAT ACTION BY PASSING IT OFF TO CHAPTER 971 OF THE OHIO REVISED CODE.
 8. THE COURT ERRED WHEN IT STATED THE BAKERS HAD A RIGHT TO RUN UTILITY LINES UNDER THE ROAD.
Finding no reversible error, we affirm the judgment of the trial court.
 I.
This case involves a dispute over a twenty-foot wide tract of land. The original parcel of land was divided in 1912 into a front parcel of fifty-four acres and a back parcel of forty acres. The twenty-foot tract at issue bisects the front parcel and provides the back parcel with access to a public road.
In 1996, the Hursts brought an action to quiet title, claiming a fee interest in the twenty-foot tract. The Bakers counter-claimed, asserting a fee interest in the tract and also arguing in the alternative that they had a possessory interest by adverse possession or prescription. The trial court found that the Bakers owned a fee interest in the tract and the Hursts had an easement. We reversed and held that that "[the Hursts] are the fee simple owners of the roadway * * *" and that "[a] further hearing may also be held to determine the rights and responsibilities of [the Bakers] with respect to their easement over this roadway." Hurstv. Baker (Apr. 18, 1997), Gallia App. No. 96CA07, unreported ("Hurst I").
On remand, the trial court conducted a brief hearing and determined that the Hursts had a fee simple interest and that the Bakers had an easement. The Hursts appealed from that decision and asserted that the trial court erred in interpreting Hurst I
as holding that the Bakers possessed an easement. In Hurst v.Baker (Dec. 23, 1998), Gallia App. No. 98CA02, unreported ("HurstII"), we held that our prior decision did establish an easement in favor of the Bakers but remanded the case for "the lower court to enter a judgment which clearly sets out the specific and respective rights and duties of the parties to each other vis-à-vis this easement."
The trial court then conducted a hearing during which both parties introduced evidence and testimony. Thereafter, the trial court issued a judgment entry delineating the rights and responsibilities of the parties. The Hursts timely appealed from this entry.
 II.
An easement is an interest in the land of another that entitles the owner of the easement to a limited use of the land in which the interest exists. Szaraz v. Consolidated R.R. Corp. (1983),10 Ohio App.3d 89, 91. In Hurst II, we explicitly found that appellees possessed an easement over the roadway but did not specify the type of easement. "The process which creates an easement also fixes its extent." 36 Ohio Jurisprudence 3d (1982) 455, Easements and Licenses, Section 53.
The history of the deeds in this case was outlined in Hurst I
and we need not fully reiterate it here. The original conveyance of the back forty-acre parcel that the Hursts now own did not expressly provide for an easement in favor of the original grantor who retained the front fifty-four acre tract that the Bakers now own. However, an implied easement arises from existing use when there is:
 (1) A severance of the unity of ownership in an estate; (2) that before the separation takes place, the use which gives rise to the easement shall have been so long continued and obvious or manifest as to show that it was meant to be permanent; (3) that the easement shall be reasonably necessary to the beneficial enjoyment of the land granted or retained; (4) that the servitude shall be continuous as distinguished from a temporary or occasional use only.
Ciski v. Wentworth (1930), 122 Ohio St. 487, paragraph one of the syllabus. The implied easement is based on the theory that without it the grantor or the grantee cannot make use of his land and that "whenever one conveys property he includes in the conveyance whatever is necessary for its beneficial use and enjoyment and retains whatever is necessary for the use and enjoyment of the land retained." 36 Ohio Jurisprudence 3d (1982) 429, Easements and Licenses, Section 32.
It appears that the original conveyors, John and Effie Lowks, intended to retain an easement over the roadway so that the front parcel could continue to be conveniently farmed. Without such an easement, the owners of the front parcel would no longer be able to enjoy the fifty-four acre tract as they did prior to the conveyance. Further, based on the original deeds, it is clear that the roadway was in existence at the time and was a "permanent" fixture. Therefore, we conclude that an implied easement has been established.
Furthermore, even if an implied easement did not exist, a prescriptive easement over the roadway has been established. A prescriptive easement is created when a claimant uses disputed property in a manner that is open, notorious, adverse and continuous for twenty-one years. J.F. Gioia, Inc. v. Cardinal Am.Corp. (1985), 23 Ohio App.3d 33. Generally, the claimant's use of the property determines the nature and extent of the easement that will be created. Pavey v. Vance (1897), 56 Ohio St. 162. The testimony adduced at the hearings establishes that that the Bakers and their predecessors in interest have utilized the roadway to fully access their farm for over twenty-one years and met the other requirements. Therefore, a prescriptive easement also exists in appellees' favor.
 III.
Appellants' assignments of error contend that the trial court did not set forth the respective rights and responsibilities of the parties as directed by this Court and that the court erred in making various findings. We consider these assignments together.
In their first assignment of error, appellants assert that the trial court erred in failing to follow the directive of this Court to set forth in detail the respective rights and responsibilities of the parties. Appellants contend that the trial court failed to address various issues including whether they could build a fence on their property and who would be responsible for payment of the fence if constructed.
We disagree. The trial court issued a seven page judgment entry delineating the various rights and responsibilities of the parties. The court found that if fences are built, each party should bear his proportionate costs. The court further found that if there was a dispute as to the erection of fences, R.C. Chapter 971 should be followed and the township trustees should resolve the matter. The trial court indicated that, at any rate, appellants could not construct a fence that would interfere with appellees' right to use the twenty-foot right of way.
While appellants may not agree with the trial court's ruling regarding fencing, the court did address the issue and outline the procedure which appellants should follow if they desire to erect a fence but appellees do not. Therefore, appellants' first assignment of error is overruled.
In the remaining assignments of error, appellants argue that the court erred in making various factual findings and decisions regarding the parties' rights and responsibilities based on those findings. When the intended dimensions of an easement are not explicitly expressed, determining the dimensions becomes largely a question of fact, and the trial court's finding will be upheld if it is not contrary to the manifest weight of the evidence.Murray v. Lyon (1994), 95 Ohio App.3d 215, 220; Sheldon v. Flinn
(1993), 89 Ohio App.3d 490, 494; Crane Hollow, Inc. v. MarathonAshland Pipe Line, LLC (June 6, 2000), Hocking App. No 99CA16, 99CA17 and 99CA18, unreported. An appellate court will not reverse a trial court's judgment so long as it is supported by any competent, credible evidence going to all of the essential elements of the case. Sec. Pacific Natl. Bank v. Roulette (1986),24 Ohio St.3d 17, 20; C.E. Morris Constr. Co. v. Foley Constr.Co. (1978), 54 Ohio St.2d 279, 280. Under this highly deferential standard of review, a reviewing court does not decide whether it would have come to the same conclusion as the trial court. Rather, we are required to uphold the judgment so long as the record, as a whole, contains some evidence from which the trier of fact could have reached its ultimate factual conclusions. We are guided by the presumption that the trial court's factual findings are correct because of the knowledge that the trial judge "is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony." Seasons Coal Co. v. Cleveland (1984), 10 Ohio St.3d 77,79.
In their second assignment of error, appellants argue that the court erred in finding that appellees had a right to enter the servient estate at all reasonable times in order to effect the necessary repairs and maintenance. They further argue that the court erred in finding that the easement owner may grade, gravel, plow and pave the roadway. Appellants contend that although the trial court gave the Bakers the right to make repairs, it did not say who would be responsible for such repairs and the costs of the repairs.
The trial court stated that, "[i]n order that the owner of the easement may perform the duty of keeping it in repair, [the Bakers] have a right to enter the servant estate * * *." We interpret this provision as clearly providing that the Bakers have a duty to repair the roadway and, therefore, the right to enter the roadway to effect such repairs is necessary.
The owner of a servient estate has no obligation to make repairs unless bound by covenant or prescription to do so. 36 Ohio Jurisprudence 3d (1982) 463-464, Easements and Licenses, Section 60. The owner of an easement is under a duty to make any necessary repairs to prevent the use of the easement from becoming an annoyance or nuisance to the owner of the servient estate. Id. at 464. If the roadway becomes so out of repair as to be dangerous to the servient estate, the servient owner may recover damages for any injury sustained or enjoin any threatened irreparable injury. Id. Lastly, an easement owner may improve the easement. Id.
Based on this statement of the law and the facts adduced at the hearings, we cannot say that the trial court's ruling regarding repair of the roadway is not supported by some competent, credible evidence. The court properly ruled that the Bakers are liable for maintaining the roadway for their own use and repairing any damage they cause that may interfere with the Hursts' ownership of the roadway. Therefore, they must be allowed access to the roadway to effect such repairs. Appellants' second assignment of error is overruled.
In their third assignment of error, appellants argue that the trial court erred in its rulings regarding fencing. Appellants contend that the trial court ignored this Court's prior ruling which held that J.W. Lowks' responsibility of erecting a fence is passed to the Bakers.
In Hurst I, this Court indicated that "[t]he outcome of this case is governed by the original deed from John and Effie Lowks to William A. Lowks." However, we never stated that the Bakers were required to erect a fence running the length of the roadway. Appellants rely on the portion of the original deed which states that "[t]he said J.W. Lowks is to [k]eep both sides of said road fenced * * *" to support its position that the Bakers, as the current owners J.W. Lowks' land, are required to build such a fence.
We do not agree. The testimony indicated that the Bakers have fences on either side of the roadway that prevent cattle from entering the roadway. The original deed does not provide that the fencing must run the entire length of the roadway and, therefore, we must consider the intent of the parties when interpreting this provision. See Ball v. Foreman (1881), 37 Ohio St. 132, 141-142;Baker v. Jordan (1854), 3 Ohio St. 438, 444-445.
There is no evidence that fencing ever ran the entire length of both sides of the roadway. Because the land has traditionally been used for farming, it appears that the purpose of the fencing requirement was to provide the owners of the roadway with unimpeded access to their land. The most obvious purpose for requiring a fence would be to keep livestock off the road. The current fence appears to satisfy this purpose. Therefore, we cannot agree with appellants' position that the trial court's conclusions regarding the erection of fencing is not supported by the evidence. Appellants' third assignment of error is overruled.
In their fourth assignment of error, appellants contend that the deed prohibits the placement of any gates in the fence. Appellants argue that the court erred in finding that the gate in the pasture fence on the upper left hand side of the property has been in existence for over sixty years and erred in saying that Mr. Baker testified to the gate having been there for sixty years. Appellees concede that while the fence has existed for well over sixty years, the gate has not.
We agree with the parties that the trial court erred in finding that this particular gate has been in existence for over sixty years. We note, however, that the purpose of the easement has consistently been to allow the owners of the fifty-four acre property to access both portions of their farmland more easily. Further, Mrs. Baker testified that there is no access to the garden without the use of the roadway because a creek precludes access from Lowks Road. While the gate itself may not have been built until approximately 1991, the gate did not change the use of the easement. Furthermore, the gate in no way impedes appellants' use of the road or access to their tract.
An owner of an easement has no right to increase the burden of the easement or to materially enlarge it. 36 Ohio Jurisprudence 3d (1982) 462, Easements and Licenses, Section 58. However, "[a] use may be allowed natural expansion in accordance with the purpose of the easement" so long as no greater burden is placed on the servient estate. 25 American Jurisprudence 2d (1996) 665, Easements and Licenses, Section 93.
Therefore, we agree with the trial court's conclusion that a gate is permissible as long as it does not materially harm appellants' use of the roadway. While the original deed indicates that no gates are allowed, we concur with the trial court's interpretation of this provision as barring gates running across the roadway but not alongside the roadway. Further, this "new" gate does not materially change the use of the easement. Appellants' fourth assignment of error is overruled.
Appellants' fifth assignment of error contends that the court erred in finding that the Bakers can park in the driveway. Appellants argue that there was no testimony that appellees parked in the driveway until recently. Appellees refer this Court to defense exhibit B, a photograph of Delores Baker's husband with his truck parked in the roadway that was taken in 1966.
The trial court ruled that the Bakers cannot park in the roadway such that it impedes the appellees' use of the driveway but did not prohibit them outright from parking in the roadway. Appellees' use of a small portion of the roadway as a parking area does not interfere with appellants' access to and from their home. Furthermore, such use is consistent with their use of the roadway to access the farm, but does not materially increase the burden on the servient estate. Therefore, we cannot find that the trial court's ruling is against the manifest weight of the evidence. Appellants' fifth assignment of error is overruled.
In their sixth assignment of error, appellants argue that the trial court erred in finding that the Bakers could use the culvert as a passageway for cattle. Appellants argue that the use of the culvert as a passageway for cattle has not been continuous and, therefore, has not ripened into an easement.
We disagree. The testimony demonstrates that the culvert was built in the late 1960s or early 1970s. Several witnesses testified that cattle have traveled through the culvert since that time. Continuous use of an easement depends on the purpose of the easement. Id. at 637, Section 68. Such use need not be daily, weekly or even monthly, but the claimant must use the land as an average owner would. Id. Here, the culvert has been used to allow cattle to freely travel to both sides of the Bakers' property. While the cattle may not have passed through the culvert on a daily or weekly basis, the fact that they had continuous access to do so, as testified to by the witnesses, establishes the continuous use of the easement through the culvert. Therefore, the trial court's ruling is not against the manifest weight of the evidence and appellants' sixth assignment of error is overruled.[1]
In their seventh assignment of error, appellants argue that the court erred when it failed to make specific designations as to the rights and responsibilities of the parties with regard to the fence and in delaying that action by passing it off to Chapter 971 of the Revised Code. As we have previously held that the trial court's conclusions regarding the fence are sufficient, and not erroneous, we overrule appellants' seventh assignment of error.
In their final assignment of error, appellants argue that the court erred when it held that the Bakers had the right to run utility lines under the roadway. Appellants correctly assert that the utility lines have only been under the roadway for ten years so a prescriptive easement could not have ripened. Further, such use was not contemplated when the implied easement was created. The trial court determined that each party could improve their property and appellees could run utility lines under the roadway if necessary. The court further held that the party running the utility lines bore the responsibility for costs of repair resulting from the lines.
We agree with appellants that such use by appellees is technically improper. However, given that the utility lines were installed ten years ago without any formal action to prohibit them, we see no need to require their removal now. However, appellees are strongly cautioned not to expand their use of the easement in the future. Therefore, appellant's eighth assignment of error is overruled.
 JUDGMENT ENTRY
It is ordered that the JUDGMENT BE AFFIRMED and that Appellee recover of Appellant costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Gallia Common Pleas Court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure. Exceptions.
Kline, P.J.: Concurs in Judgment and Opinion as to Assignments of Error I through VII; Dissents as to Assignment of Error VIII, Abele, J.: Concurs in Judgment and Opinion.
 ________________________ William H. Harsha, Judge
[1] This does not, however, preclude appellants from widening the culvert so long as they do not interfere with the Bakers' use.